CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON
et al., Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION et al.,
Defendants.

14–CV–4717 (FB)

United States District Court,
E.D. New York.

Signed November 17, 2016

Aisha E. Bembry, Jessica Buckwalter, Joseph L. Ruby, Mark J. Leimkuhler, Martin R. Baach, Lewis Baach PLLC, Washington, DC, Ronald Abramson, Lewis Baach PLLC, New York, NY, for Plaintiffs.

Rhonda D. Orin, Daniel John Healy, Stephen D. Palley, Anderson Kill & Olick LLP, Angela Singleton, Orrick, Herrington & Sutcliffe LLP, Washington, DC, Vivian Costandy Michael, Anderson Kill, New York, NY, Anthony R. Gambardella, Lawrence Adam Levy, Michael A. Kotula, Robert A. Maloney, Rivkin Radler LLP, Uniondale, NY, Richard Bryan, Christopher Michael Quinlan, Kristen Vine, Jackson & Campbell, P.C., Washington, DC, Steven Gary Adams, Law Offices of Michael F. Klag, Jeffrey A. Mathews, Law Offices of Beth Zaro Green, Brooklyn, NY, William Eugene McGrath Jr., Smith Stratton, Princeton, NJ, Brian Michael Reid, Nicholas D. Butovich, Litchfield Cavo LLP, Chicago, IL, Vincent J. Velardo, Litchfield Cavo LLP, New York, NY, Ernesto Palomo, Locke Lord LLP, Chicago, IL, Jeffrey Steven Kramer, Joseph N. Froehlich, Locke Lord LLP, New York, NY, Robert A. Badgley, Karbal Cohen Economou Silk Dunne LLC, Chicago, IL, Kathryn M. Frost, Greta Matzen, Elenius Frost & Walsh, Chicago, IL, John S. Favate, Arthur A. Povelones, George Richard Hardin, Hardin, Kundla, McKeon & Poletto, P.A., Springfield, NJ, William Patrick Lalor, Elenius Frost & Walsh, New York, NY, Christopher Scott D'Angelo, Montgomery McCracken Walker & Rhoads LLP, Philadelphia, PA, Adam Daniel Krauss, Robert P. Siegel, Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY, Alison P. Baker, Shipman and Goodwin LLP, Stamford, CT, Charles E. Leasure, Katherine Hance, Shipman & Goodwin LLP, Washington, DC, Claude N. Grammatico, Epstein, Gialleonardo, Frankini, Mineola, NY, Kristin S. Heres, Wm. Gerald McElroy, Jr., Zelle Hofmann Voelbel & Mason LLP, Framingham, MA, Mark W. Zimmerman, Elise D. Allen, Clausen Miller P.C., Chicago, IL, Steven J. Fried, Clausen Miller PC, Whitney Morgan Smith, Cahill Gordon and Reindel, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE

Plaintiff London market insurance companies ("LMI") seek to compel defendant National Railroad Passenger Corporation ("Amtrak") to re-produce two documents used by LMI as deposition exhibits that Amtrak has since "clawed back" after asserting attorney-client privilege and work-product protections. For the following reasons, LMI's motion is granted.

## PROCEDURAL BACKGROUND

The Court presumes familiarity with the factual background of this extensive litiga-

tion. Pertinent to the instant motion, on August 8, 2014, LMI initiated this lawsuit, in which discovery is ongoing. See Complaint, Electronic Case Filing ("ECF") Docket Entry ("DE") # 1. In 2015, pursuant to Rule 502(d) of the Federal Rules of Evidence ("FRE"), the Court entered a protective order, which provides, among other things, that the parties will not "waive[ ] or forfeit[ ] . . . any claim of privilege or work-product protection" by "disclos[ing] or mak[ing] available information" that is "later identified to be subject to [such a claim]," unless the producing party affirmatively uses that information in the litigation by "motion, pleading or otherwise[.]" Letter Motion for Protective Order (Amended) (Apr. 28, 2015) ¶ 13, DE # 223; Electronic Order (Apr. 29, 2015).

This Court thereafter construed the non-waiver provision in the protective order to provide that, regardless of the degree of care taken, a party does not waive its privilege merely by producing documents in discovery. See Transcript of January 29, 2016 Civil Cause for Oral Argument (docketed Feb. 5, 2016) ("1/29/16 Tr.") at 90:9–93:2, DE # 309; Minute Order for Motion Hearing on January 29, 2016 (docketed Feb. 1, 2016) at 1, DE # 304. In connection with the parties' earlier discovery disputes, Amtrak's counsel conceded, and the contemporaneous emails exchanged between counsel demonstrate, that the purpose of the language in the non-waiver provision was to streamline and expedite Amtrak's initial production of responsive documents accumulated over many decades, without having to undertake "a document-by-document review" or "a privilege review of any kind." 1/29/16 Tr. 48:6–8; see id. at 45:1–48:25.

On September 8, 2015, Amtrak provided a privilege log to LMI corresponding to its document review to date, see Declaration of Mark J. Leimkuhler in Support of LMI's Motion to Compel Amtrak to Produce Documents on Its Privilege Log (Apr. 4, 2016) ¶ 2, DE # 342–1, which LMI has since challenged, see id. ¶ 8. In the course of subsequent motion practice and negotiations between the parties concerning documents withheld as privileged, Amtrak revised its log multiple times and, after "a detailed review of each and every one" of the challenged documents, withdrew its privilege and work-product claims for more than 1,000 such documents, which it then produced to LMI. See Response in Opposition re Letter Motion to Compel (Apr. 14, 2016) at 1–2, DE # 360. Amtrak recorded its privilege determinations in a chart that it also provided to LMI. See Declaration of Mark J. Leimkuhler in Support of LMI's Motion to Compel Clawed Back Documents (Nov. 4, 2016) ("Leimkuhler Decl.") ¶ 7, DE # 473–1; id., Ex. E, DE # 473–6.

On October 25 and 26, 2016, LMI deposed Robert Noonan, a former Amtrak employee. See Leimkuhler Decl. ¶ 2. During the first day's examination, counsel for LMI introduced a document marked "Exhibit 26," see id. (citing id., Ex. A, DE # 473–2), which Amtrak had initially withheld as privileged but thereafter designated as confidential and produced to LMI upon withdrawing its privilege claim, see Leimkuhler Decl. ¶¶ 7–8; Motion to Compel Clawed Back Documents (Nov. 4, 2016) ("Pl. Mot.") at 2, DE # 473. When LMI's counsel examined Noonan concerning Exhibit 26, Amtrak's counsel noted that the document was labeled "work product," and stated, "I don't know if this is something that we produced off the [privilege] log after motion practice but I will just reserve Amtrak's rights." Id., Ex. A, at 216:6–9. He nevertheless allowed questioning about the document to proceed. Id., Ex. A, at 216:6–219:21.

The following day, October 26, 2016, Noonan's deposition continued, and LMI's

counsel introduced another document, marked "Exhibit 44," and questioned Noonan about it for approximately ten pages of transcript. Leimkuhler Decl. ¶ 3 (citing id., Ex. B, DE # 473–3). While Amtrak's counsel lodged objections throughout LMI's examination on the document, he did not specifically assert that Exhibit 44 was privileged or otherwise exempt from disclosure, though he did instruct Noonan not to answer questions concerning other communications with an in-house lawyer for Amtrak whose name appears in Exhibit 44. See id., Ex. B, at 62:1–72:13; Letter (Nov. 10, 2016) ("Def. Opp."), Ex. 1, at 409:25–410:18, DE # 481–1.

On October 27, 2016, the day after the Noonan deposition concluded, counsel for Amtrak sent a letter to all parties "clawing back" Exhibits 26 and 44 and asserting that both are subject to attorney-client privilege and work-product protection. See Leimkuhler Decl., Ex. C, DE # 473–4. Amtrak described Exhibit 26 as a "set of notes created jointly by Mr. Noonan[,]" then an Amtrak employee, "and outside counsel[,]" which is designated on its face as privileged work product and contains "legal advice and impressions to Amtrak[,]" as well as "notes by and impressions of counsel based on interviews with Amtrak employees[,]" "in the context of ongoing litigation and cla[i]ms." Id. at 1. Amtrak characterized Exhibit 44 as "a very similar type of memorandum[,] written about meetings and interviews held with Amtrak employees … in preparation for meetings with the [Environmental Protection Agency]." Id. According to Amtrak, "[c]ounsel's communications with client employees are set forth in the memorandum and the memorandum was sent to counsel." Id. Amtrak asked LMI to destroy all copies of Exhibits 26 and 44 and confirm their having done so. See id. at 2.

Counsel for LMI and Amtrak conferred via telephone on November 1, 2016 about Amtrak's clawback request. See Leimkuhler Decl. ¶ 5. LMI asked Amtrak to withdraw its demand because, in their view, no privilege or work-product protections applied to Exhibits 26 and 44. See id. Amtrak refused, see id., and the instant motion followed. See Pl. Mot.

In their Motion, LMI contend that, for several reasons, Amtrak has waived any privilege or work-product protection for Exhibits 26 and 44. They argue that, in permitting Noonan to testify about the two exhibits, Amtrak waived any privilege claim for either. See Pl. Mot. at 1, 2. With respect to Exhibit 26, LMI additionally assert that any privilege was waived when Amtrak intentionally produced that document in the course of revising its privilege log. See id. at 1–2. Finally, LMI maintain that Amtrak cannot claim work-product protection for Exhibit 26 because, pursuant to this Court's July 13, 2016 Memorandum and Order ("7/13/16 M & O"), "Amtrak is not entitled to [such] protection for documents created after [it] entered into a consent order or voluntary agreement with a government entity with respect to … the [work] sites at issue" in this litigation. Pl. Mot. at 2 (quoting 7/13/16 M & O at 27, DE # 406). Because Amtrak entered into a voluntary agreement in February 1998 concerning the "Wilmington Shops" work site, which is the subject matter of Exhibit 26, see Leimkuhler Decl., Ex. G, LMI argue that Amtrak cannot claim work-product protection for the document, which is dated May 2, 2002, see Pl. Mot. at 2.

On November 10, 2016, Amtrak filed an opposition to LMI's motion. See Def. Opp. Citing a prior ruling of this Court, Amtrak contends that, due to the broad language of the non-waiver provision in the protective order, the parties can *never* waive privilege with respect to *any* document, including Exhibits 26 and 44. See id. at 2 (citing, *inter alia*, 1/29/16 Tr. at 90:9–92:5).

Amtrak further argues that, even if waiver were possible, it made timely objections to LMI's use of Exhibits 26 and 44 at deposition since its counsel "did object and reserve Amtrak's rights" with respect to Exhibit 26; "directed [Noonan] not to answer questions about conversations with an attorney who received [Exhibit 44]"; and "timely sent a letter requesting clawback ... on October 27, the very day after the deposition." Id. at 3. Amtrak articulated no arguments in favor of work-product protection. See id.

## DISCUSSION

■ The Federal Rules of Evidence ("FRE") set default standards governing the inadvertent disclosure of information that is subject to the attorney-client privilege or other protections. See Fed. R. Evid. 502(b). Under these standards, no waiver results from "inadvertent" disclosure if the privilege holder "took reasonable steps to prevent disclosure" and "promptly took reasonable steps to rectify the error ...." Id. Federal courts may, however, supplant the FRE's default standards in favor of more forgiving non-waiver provisions. See Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court ....."); see also Fed. R. Evid. 502(e); United States v. Wells Fargo Bank, N.A., No. 12–CV–7527 (JMF), 2015 WL 5051679, at *2 (S.D.N.Y. Aug. 26, 2015) (noting that courts within the Second Circuit construe non-waiver provisions in protective orders to require waiver "only where the producing party acted in a 'completely reckless' manner with respect to its privilege").

■ By their terms, Rules 502(d) and (e) apply only to waiver in connection with *disclosures*, and say nothing of waiver by other means.[1] Accordingly, while an appropriately worded protective order may prevent waiver due to a producing party's *disclosure* of privileged information, that party's subsequent failure to timely and specifically object to the *use* of that information—during a deposition, for example—*can* waive any applicable privilege. See, e.g., Luna Gaming–San Diego, LLC v. Dorsey & Whitney, LLP, No. 06cv2804, 2010 WL 275083 BTM (WMc), at *4–5 (S.D. Cal. Jan. 13, 2010) (holding under both federal and state law that failure to object immediately and specifically to introduction of a privileged document at deposition, while permitting questioning regarding its substance, waived privilege).[2]

---

1. Some courts have expressly concluded that non-waiver provisions entered under Rules 502(d) and (e) apply only to *inadvertent* disclosures. See, e.g., Hologram USA, Inc. v. Pulse Evolution Corp., No. 2:14–v–00772–GMN–NJK, 2016 WL 3654285, at *2 (D. Nev. July 5, 2016) ("Claw-back provisions ... govern only waivers by inadvertent disclosure. They are intended to override the common law as to inadvertent disclosure, not displace the entire common law concerning privilege." (internal citation omitted)); cf. Hostetler v. Dillard, No. 3:13–cv–351–DCB–MTP, 2014 WL 6871262, at *4 (S.D. Miss. Dec. 3, 2014) (holding that Rule 502(d) and a broad clawback provision approved by the court "are not applicable to the *intentional* disclosures at issue"). For the reasons discussed below, while the Second Circuit does not appear to

have decided whether Rule 502(d) applies only to inadvertent disclosures, the Court need not address this issue in light of the specific language of the non-waiver provision under consideration here.

2. See also, e.g., Hologram USA, 2016 WL 3654285, at *2–3 (finding waiver, despite clawback provision, where purportedly privileged documents were "entered as exhibits" at deposition, "formed the basis of questions, and were partially read into the record" without specific objection); Wells Fargo Bank, 2015 WL 5051679, at *1, *4 & n.6 (finding waiver, despite "seemingly broad sweep" of non-waiver provision, where counsel asserted during deposition that an exhibit "might be" privileged but nevertheless allowed examination concerning the document); Jacob v.

In <u>Wells Fargo Bank</u>, for example, the court had entered a "broad[ly] sweep[ing]" protective order providing peremptorily "that disclosure [of privileged information] d[id] not waive any applicable privileges . . . ." 2015 WL 5051679, at *1, *4 (emphasis removed). During a deposition, defense counsel examined a witness on two documents that plaintiff later clawed back for privilege. <u>See id.</u> at *4. Though plaintiff's counsel asserted at the time that one of the documents at issue "might be" privileged, he nevertheless allowed questioning about the document to continue. <u>Id.</u> at *4 n.6. The court concluded that the defendants were entitled to re-production of both documents, despite the non-waiver provision. <u>Id.</u> at *4. While acknowledging that the non-waiver provision "provide[d] that *disclosure* does not waive any applicable privileges" absent complete recklessness on the part of the producing party, the court concluded that the provision "sa[id] nothing about whether the *failure to object* to *use* of a document[ ] constitute[d] waiver." <u>Id.</u> The court deemed insufficient plaintiff's counsel's generalized, tentative objection. <u>See id.</u> at *4 n.6; <u>accord Hologram USA</u>, 2016 WL 3654285, at *3.

■ Here, Amtrak has waived privilege and work-product protection for Exhibits 26 and 44 by failing to seek to preclude their introduction and use at the Noonan deposition. Though Amtrak is arguably correct that the protective order does not provide for waiver based on the mere *disclosure* of privileged information, nothing in the protective order speaks to the situation at issue here, where Amtrak failed to

timely and specifically object to a party's *use* of privileged material. LMI introduced both exhibits at the Noonan deposition and questioned Noonan about them for several pages of transcript. <u>See</u> Leimkuhler Decl., Ex. A, at 216:6–219:21; <u>id.</u> ¶ 3 (citing <u>id.</u>, Ex. B, DE # 473–3). Amtrak's counsel noted at the time that Exhibit 26 was labeled "work product," and purported to "reserve[ ] Amtrak's rights[,]" but nevertheless permitted questioning about the document to proceed. <u>Id.</u>, Ex. A, at 216:6–9. Generalized objections of this kind are insufficient to preserve a claim of privilege. <u>See, e.g., Hologram USA</u>, 2016 WL 3654285, at *2–3; <u>Wells Fargo Bank</u>, 2015 WL 5051679, at *4 & n.6.

As for Exhibit 44, Amtrak never specifically objected to LMI's examination of Noonan concerning the exhibit, but rather invoked privilege with respect to *other* communications between Noonan and an in-house lawyer who had received a copy of the document. <u>See</u> Def. Opp. at 2; <u>id.</u>, Ex. 1, at 409:25–410:18. While Amtrak's assertions are surely sufficient to maintain privilege with respect to those other communications, they do not insulate Exhibit 44 from a finding of waiver. <u>See, e.g., Hologram USA</u>, 2016 WL 3654285, at *1, *3 (finding waiver with respect to emails used as exhibits during deposition, without objection, even though counsel objected to further questions concerning privileged subject matter raised in those emails).

That Amtrak removed Exhibit 26 from its privilege log after a detailed review also counsels in favor of finding waiver. This was no mere inadvertence at work,

Duane Reade, Inc., No. 11 Civ. 0160(JMO)(THK), 2012 WL 651536, at *5 (S.D.N.Y. Feb. 28, 2012) (finding waiver where, "even when . . . counsel became aware of the email which, on its face, suggested a privilege argument, he allowed a witness to be deposed about it . . . and failed to raise a privilege objection or demand the email's re-

turn for more than two months"); *In re* Philip Servs. Corp. Secs. Litig., No. 98CIV0835 MBM DF, 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005) (finding waiver where "two [purportedly privileged] letters were apparently marked as exhibits a[t] a deposition . . ., and the witness was questioned about them, without objection from any party").

brought on by the constraints of high-volume document productions; to the contrary, Amtrak's decision to withdraw its claim of privilege for Exhibit 26 was an explicit waiver after considered legal analysis. See, e.g., Francisco v. Verizon S., Inc., 756 F.Supp.2d 705, 719 (E.D. Va. 2010) (finding waiver where producing party "did not accidentally include a single document, known to be privileged, in a large collection of otherwise non-privileged documents[,]" but rather "intentionally, and after apparent analysis," determined that a privileged document could be produced in redacted form and marked "confidential").

Amtrak seems to argue that the non-waiver provision in the instant case permits the parties to assert and retract claims of privilege at will, see Def. Opp. at 2, but this goes too far. Case law and commentary make clear that Rule 502(d) was intended to make discovery issues relating to privilege and waiver more predictable, not insulate parties entirely from the possibility of waiver, see Fed. R. Evid. 502 advisory committee's note ("[W]hile establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine entirely."). This is especially true where, as here, disclosure is intentional. See Hostetler, 2014 WL 6871262, at *4. Amtrak's reading of the non-waiver provision would yield an absurd result, permitting Amtrak to claw back documents, even those used by LMI in depositions and court filings, at any time—conceivably, even through the close of litigation.[3] The protective order, which was entered by this Court, does not countenance such gamesmanship.

Finally, Amtrak has also waived any work-product protection for Exhibit 44 because, as this Court has previously concluded, Amtrak may not claim such protection for documents created after it "entered into a consent order or voluntary agreement with a government entity with respect to each of the [work] sites at issue" in this litigation. 7/13/16 M & O at 27. Amtrak entered into a voluntary agreement in February 1998 concerning the Wilmington Shops site, which is the subject matter of Exhibit 26, see Leimkuhler Decl., Ex. G, and cannot now claim work-product protection for the exhibit, which is dated May 2, 2002, see Pl. Mot. at 2. Amtrak does not appear to contest LMI's arguments on this issue. Though it suggests that Exhibit 44 is no longer relevant to this litigation, see Def. Opp. at 1, this has no bearing on work-product protection.

## CONCLUSION

For the foregoing reasons, Amtrak is directed to produce Noonan Exhibits 26 and 44 to plaintiffs by November 21, 2016.

Any objection to this Memorandum and Order must be filed with the Honorable Frederic Block by **December 5, 2016**, or will be deemed waived.

**SO ORDERED.**

---

**3.** Despite Amtrak's claims, this Court's ruling during the January 29, 2016 hearing is not to the contrary. There, the Court addressed waiver in the context of Amtrak's initial document production, which the parties anticipated would not involve a document-by-document privilege review, as opposed to its subsequent privilege review and consequent redesignation of a number of privileged documents for production to LMI. See 1/29/16 Tr. at 45:1–48:25, 90:9–92:5.